1

2    K:\COMMON\CHMB_WHE\_ Orders to be signed\Order Denying Class certification

3    Goins

4

5

6

7

8

9

10

11                    **UNITED STATES DISTRICT COURT**

12                    **SOUTHERN DISTRICT OF CALIFORNIA**

13

14   PERSEVERANDA GOINS, an                 CASE NO. 05-CV- 1340 W (CAB)
     individual; MARIE AFICIAL, an
15   individual; and ANTONIA TORRES,
     an individual,
16
                                            **ORDER DENYING**
17                          Plaintiffs,     **PLAINTIFF'S MOTION FOR**
                                            **CLASS CERTIFICATION**
18        v.

19

20   YOUR FINANCIAL RESOURCE,
     INC., a California Corporation, dba
21   ACE Cash Express; ACE CASH
     EXPRESS, INC., a Texas corporation,
22   dba ACE Cash Express;

23
                           Defendants.
24

25        On June 1, 2005 Plaintiffs Perseveranda Goins, Marie Aficial, and Antonia Torres

26   ("Plaintiffs") commenced this putative class action against Defendants Your Financial

27   Resource, Inc., and ACE Cash Express, Inc. ("Defendants") in the Superior Court of

28   California, County of San Diego.  Plaintiffs assert that Defendants violated various

statutes designed to regulate payday advances, the Consumer Legal Remedies Act ("CLRA"), and California Business & Professions Code § 17200 *et seq* ("UCL"). On July 1, 2006, Defendants removed the action to this Court. On April 13, 2006, Plaintiffs moved for class certification. Defendants oppose Plaintiffs' request for class certification. Both sides are represented by counsel. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). For the reasons outlined more fully below, the Court **DENIES** Plaintiffs' motion for class certification.

## I.   BACKGROUND

This case involves the "payday" loan industry. California statutory law strictly regulates lending transactions that are officially defined as deferred deposit transactions but commonly known as "payday loans". Until January 1, 2005, this industry was governed by California's Check Casher Statute, previously found at California Civil Code § 1789.30, *et seq.* Effective January 1, 2005, this statutory scheme was completely replaced by the Deferred Deposit Transaction Law, found in California Financial Code § 23000, *et seq.*

In such transactions, companies provide consumers with cash when they need it and defer either depositing the customer's repayment check, or debiting the consumer's bank account until an agreed-upon later date, when the consumer has the funds available. Defendant ACE Cash Express ("ACE") is a Texas corporation which both sells franchises of "ACE Cash Express" stores and also operates its own stores in California. (*P&A* at 2.) ACE has approximately 1,500 stores nationwide, of which 200 are franchise operations and the other 1,300 are company-owned and operated stores. (*Id.*) This case is limited to ACE's conduct in California, both in its capacity as the owner and operator of more than 80 stores in California, and as franchisor of six stores that operated in San Diego County. (*Id.*)

Defendant Your Financial Resource, Inc., ("YFR"), was an ACE franchisee that did business as ACE Cash Express at six locations in San Diego County. (*P&A* at 3.)

YFR closed those loans offices and filed bankruptcy on December 16, 2005.[1]  Plaintiffs'
contend that ACE, as the franchisor of the ACE Cash Express stores that YFR operated,
remains liable for the unlawful transactions which allegedly occurred at those stores
during the time period in question.

The three Plaintiffs in this case each obtained payday loans for amounts up to
$300, each loan to be repaid in 14 days.  (*Oppo.* at 1.)  Plaintiff Perseveranda Goins
("Goins") entered into multiple deferred deposit transactions with YFR in 2003 and
2004 in San Diego County.  (*Goins Dec*. ¶ 3.)  Plaintiff Marie Aficial ("Aficial") had five
payday loans with YFR from August 2004 through the middle of March 2005 in San
Diego County.  (*Aficial Dec*. ¶¶ 3-5.)  Plaintiff Antonia Torres ("Torres") had one
transaction with an ACE company-owned store in Riverside County in March 2005.
(*Torres Dec*. ¶3).

Plaintiffs seek to certify a class which consists of all consumers who obtained one
or more payday advances from either an ACE Cash Express store which was owned and
operated by ACE at the time of the transaction, or one which was owned or operated
by YFR at the time of the transaction.[2]  Plaintiffs claim that Defendants violated the
deferred deposit statutes by using standard agreements from July 2001 onward which
stated that $20 would be charged to customers if a check was returned to Defendants
for insufficient funds, although the statutes clearly state that a customer can be charged
no more than $15 per returned check. (*P&A* at 5.)  In addition, Plaintiffs claim that
Defendants failed to include statutorily required information on the standard agreement
including the check casher's address and phone number, a notice that the check casher

---

[1] The Court takes judicial notice of the United State Bankruptcy Court, Southern District of
California Voluntary Petition of Your Financial Resources, Inc., No.05-15520-JH7,dated December
16, 2005.

[2] Excluded from the class are ACE's and YFR's officers, directors, and employees. Also
excluded are any consumer whose only payday advances from an ACE Cash Express store were
obtained prior to January 1, 2005 pursuant to a payday advance agreement containing an arbitration
clause.

is not allowed to accept collateral and a notice that the customer cannot be prosecuted for a dishonored check. (*Id.* at 6.) Plaintiffs also claim that Defendants failed to post signage required by the Deferred Deposit Transaction Law which notifies customers of the schedule of charges, and informs prospective customers that the customer cannot be prosecuted if their check is dishonored. (*Id.*)

The purported class consists of five subclasses: (1) the Check Casher Statute Subclass represented by Plaintiff Goins consisting of consumers who obtained their payday loans from an ACE Cash Express store in California between June 1, 2001 and December 31, 2004 pursuant to written agreements which did not contain an arbitration clause; (2) the Deferred Deposit Transaction Law subclass represented by Plaintiff Aficial consisting of consumers who obtained payday loans from an ACE Cash Express store between January 1, 2005 and June 1, 2005 pursuant to a written agreement which did not contain an arbitration clause; (3) the Consumers Legal Remedies Act or CLRA subclass represented by Goins and Aficial on behalf of consumers who obtained payday loans from an ACE Cash Express store after May 31, 2001 pursuant to a written agreement which did not contain an arbitration clause; (4) the UCL subclass, asserting claims under California Business & Professions Code § 17200 *et seq*, represented by Goins and Aficial on behalf of consumers who obtained payday loans from an ACE Cash Express store after May 31, 2001 pursuant to a written agreement which did not contain an arbitration clause; and (5) the Injunctive Relief Subclass represented by Plaintiff Torres on behalf of consumers who entered into one or more deferred deposit transactions after January 1, 2005 pursuant to a written agreement which contained an arbitration provision. (*P&A* at 8-9.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) sets forth four prerequisites to class certification:

> One or more members of a class may sue or be sued as representative

1
2
3
4

> parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

5
6
7
8
9
10
11
12
13

Fed. R. Civ. P. 23(a).  Plaintiffs bear the burden of establishing each of Rule 23(a)'s prerequisites to class certification.  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citing Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985)). Thus, a plaintiff's failure to prove any requirement under Rule 23 bars class certification. Rutledge v. Electric Hose & Rubber Co., 511 F.2d 668, 673 (9th Cir. 1975).   In evaluating whether the plaintiffs have met their burden, a court should accept the substantive allegations of the complaint as true.  Blackie v. Barrack, 524 F.2d 891, 901 n. 17 (9th Cir. 1975).

14
15
16
17

"In addition to satisfying the mandatory prerequisites in Rule 23(a), potential class members must also demonstrate that they meet at least one of the alternative requirements under Rule 23(b)." Walters v. Reno, 145 F.3d 1032, 1045 (9th Cir. 1998). Certification under Rule 23(b)(3) is appropriate in cases in which

18
19
20
21

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

22
23
24
25
26
27
28

Fed. R. Civ. P. 23(b)(3).  Common questions predominate where a complaint alleges a common course of conduct that affects all class members in the same manner. Blackie, 524 F.2d at 904-05.  Courts analyze superiority under four factors set forth in Rule 23(b)(3):  (1) the individual claimant's interest in bringing and controlling separate actions; (2) the extent and nature of any litigation commenced by other class members; (3) the desirability of concentrating the litigation in one forum; and (4) the likely difficulties of managing the class action.  Fed. R. Civ. P. 23(b)(3).

Finally, district courts have "broad power and discretion ... with respect to matters involving the certification" of class actions. Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979). The decision whether to certify a class action is therefore within the district court's "considered discretion," "is subject to a 'very limited' review and will be reversed 'only upon a strong showing that the district court's decision was a clear abuse of discretion.'" Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977) ("the judgment of the trial court should be given the greatest respect and the broadest discretion, particularly if . . . he has canvassed the factual aspects of the litigation.") (quotations omitted); Armstrong v. Davis, 275 F.3d 849, 869 (9th Cir.2001) (quoting In re Mego Financial Corp. Secs. Litig., 213 F.3d 454, 461 (9th Cir.2000)).[3] A court need not reach the merits of the action in determining whether class certification is appropriate. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 179 (1974). However, a court may consider evidence even if that evidence also relates to the merits. Hanon 976 F.2d at 509.

### III.   DISCUSSION

Plaintiffs contend that each purported subclass meets all of the Rule 23(a) prerequisites, and that a class action is superior to resolving these cases on an individual basis. Defendant opposes Plaintiffs' certification motion arguing primarily that the putative class representatives claims are not typical of the proposed classes' claims.

### A.   TYPICALITY

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the [named plaintiffs] have incentives that align with those of absent class members so . . . that the absentees' interests will be fairly represented." Takeda v. Turbodyne Technologies, Inc., 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999) (citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not

---

[3]See also Clark v. Watchie, 513 F.2d 994, 1000 (9th Cir. 1975); Schwartz v. Upper Deck Co., 183 F.R.D. 672, 675 (S.D.Cal. 1999).

unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon</u>, 976 F.2d at 508 (quotations omitted).   Thus, "[t]ypicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." <u>Takeda</u>, 67 F. Supp. 2d at 1136-37 (citations omitted).  However, the claims of the representative plaintiffs need not be identical to the claims of the class, but rather the claims are typical if they are reasonably co-extensive with those of the absent class members.  <u>Hansen v. Ticket Track, Inc.</u>, 213 F.R.D. 412, 415 (W.D. Wash. 2003).  As with all of Rule 23(a)'s requirements, Plaintiffs bear the burden of demonstrating that their claims are typical of the other class members'.  <u>Hanon</u>, 976 F.2d at 508. The Court addresses each putative class representative in turn.

## PERSEVERANDA GOINS

Plaintiff Goins obtained six payday loans from YFR. (*Goins Dec*. ¶ 3.)  Goins' final payday loan repayment for $300 was due to YFR on January 21, 2004, however Goins did not repay the loan as agreed, but sent YFR a letter stating she was closing her account. (*Kirby Dec. Ex B* at 77-78.)  Thereafter, Goins began sending YFR incremental payments: $25 in January 2004, $100 in April 2004, and $50 in June 2004.  (*Id*. at 95-96.)  Five months after her loan due date, Goins had repaid YFR $175 of the $300 she owed, at which time YFR re-deposited Goins' January 21, 2004 check which cleared on July 7, 2004.  YFR sent Goins two letters advising Goins that she had overpaid YFR by $175 and informing Goins that a $175 money order in her name was waiting for her at the YFR office. (Oppo at 18.)  Goins never picked up the money order.     G o i n s contends that her claims are typical of the putative class members in the Check Casher Statute, CLRA and UCL subclasses because ACE used the same form agreements and signage in each of it's stores and franchise locations, therefore her transactions were identical to the transactions of all the putative subclass members, and her injuries the same.  (*P&A* at 16-17.)  Goins further contends that she seeks only injunctive relief

1    under the CLRA and UCL subclasses, and that as such, her claims for relief are typical

2    of the other putative subclass members.

3        Defendant counters that Plaintiff Goins' claims are anything but typical of the

4    putative subclass members because Goins' circumstances are unique.  In particular,

5    Defendants assert that Goins' claims are not typical of the claims of the putative class

6    members in the Check Casher Statute subclass because her failure to pick up her refund

7    is not the same as being overcharged in violation of former Civil Code §1789.35(k).[4]

8        Defendants further argue that Goins is not typical of the CLRA putative subclass

9    because she is not entitled to the restitution or injunctive relief sought by this subclass.

10   Specifically, Defendants contend that Goins failed to provide Defendants with the

11   notice required for a CLRA restitution claim under Civil Code § 1782(a), and there is

12   no threat of continuing misconduct to warrant injunctive relief because YFR filed for

13   bankruptcy and has shuttered it's stores in San Diego.

14       The Court finds that Plaintiff Goins cannot act as subclass representative for the

15   Check Casher Statute, CLRA, or UCL subclasses because her claims are not typical of

16   the putative subclass members' claims.  It is axiomatic that a class representative suffer

17   the same or similar injury as the class members she seeks to represent to assure that the

18   class representative has incentives that align with those of absent class members.  See

19   Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-178 (1974); Hanon v. Dataproducts

20   Corp., 976 F.2d 497, 508 (9th Cir. 1992).  While the Court is cautioned against delving

21   too deeply into the merits of the action in a class certification motion, the Court is "at

22   liberty to consider evidence which goes to the requirements of Rule 23 even though the

23   evidence may also relate to the underlying merits of the case."  Id.

24

25       [4] As former Civil Code § 1789.35(k) stated: Any person who is injured by any violation of this

26   section may bring an action for the recovery of damages, an equity proceeding to restrain and enjoin those violations, or both.  The amount awarded may be up to three times the damages actually

27   incurred, but in no event less than the amount paid by the aggrieved consumer to a person subject to this section.

28

Here the Court must determine whether Goins suffered the same or similar injury as other putative subclass members, and if so, what the contours of that injury must be to represent the Check Casher Statute subclass. According to her Complaint, Goins was overcharged $5 by Defendants, as is evidenced by a March 25, 2004 letter written by YFR to Goins in which it states the balance due includes a "service charge of $20.00 per check". (*Goins Decl*. ¶6; Exh. L.) However, the Court need look no further than the facts of Goins claim to see that YFR did not wrongfully retain a dishonored check fee. Instead, after YFR redeposited her initial repayment check and it cleared, Goins never attempted to collect the $175 repayment despite YFR sending her letters requesting she claim the overpayment. The simple fact that Goins chose not to pick up the money order does not convert her overpayment into Defendants wrongful retention of an unlawful fee. While it appears from the March 25, 2004 letter that Defendants intended to charge Goins a $20 unlawful fee, Defendants prepared a money order for the entire $175 Goins had overpaid, not deducting the $20 fee. As previously noted, Goins' failure to pick up her refund check is not the same thing as Defendants' retaining the $5 overcharge. As a result, the Court finds that Goins did not suffer the same or similar injury as the putative class members who were overcharged $5 by Defendants who retained that fee, and Goins cannot be considered typical of the class.

In the alternative, Goins argues that she is typical of the Check Casher Statute putative class members regardless of whether she suffered actual damage, because California Civil Code § 1789.35(k) allows recovery for *any* injury suffered due to a violation of the section. (*P&A* at 2-3)(emphasis added). Plaintiff contends that Defendant contractually imposed an unlawful fee in all of it's payday loan agreements, and this constitutes an unlawful threat which can be considered a cognizable injury under Civ. Code. § 1789.35(k). (*Id*. at 5-6.)

Goins cannot now re-frame her Complaint to state that the Check Casher Statute subclass seeks restitution on the grounds that the standard agreement included a threat of overcharging customers, rather than actually having been overcharged. The Check

Casher Statute subclass as pled in Goins' Complaint clearly seeks restitution for unlawful overcharges collected by Defendants, not recovery for an unlawful *threat* of overcharging. To read the statute as Goins suggests would create an overly broad subclass that was not contemplated by the original Complaint. The Court refrains from re-defining the Check Casher Statute subclass at the class certification stage of litigation, therefore, Goins cannot represent the Check Casher Statute subclass because her claims are not typical of this subclass.

The CLRA subclass, as pled in the third cause of action in the Complaint, seeks restitution and injunctive relief based on Defendants violation of Civil Code § 1750 *et seq.* (*Complaint* at 18.) Goins claims that the CLRA subclass seeks only injunctive relief, and not damages. (*Reply* at 8.) However, Plaintiff has not amended her Complaint to remove her request for restitution, therefore the Court will address this claim as originally pled.

Civil Code § 1782(a) requires a consumer notify the potential future defendants in writing about any alleged CLRA violations and demand correction within 30 days before commencing an action for relief other than an injunction. Cal. Civ. Code §1782(a). Goins did not notify Defendants as required under Section 1782(a), therefore she is atypical of the class she seeks to represent, namely a class which properly complied with the CLRA notice requirements and is therefore potentially entitled to restitution. In light of the above, the Court finds that Plaintiff Goins is not a typical representative of the CLRA subclass seeking restitution.

The CLRA subclass also seeks injunctive relief, however Defendants argue that an award of an injunction here is moot and purposeless because YFR filed bankruptcy and closed its offices in December 2005. (*Oppo* at 21.) Defendants further claim that injunctive relief is unnecessary because ACE is now in complete compliance with California's Deferred Deposit Transaction Law. (*Id.*)

Goins counters that ACE controlled the agreements and signage at the YFR stores as franchisor, and continues to operate stores in San Diego, therefore injunctive

1  relief is appropriate against ACE to ensure there can be no future harm. (*P&A* at 12.)
2  In addition, Goins argues that ACE is a "serial violator" of California law because barely
3  two months after ACE agreed to comply with the law as part of a court-approved
4  settlement, ACE provided YFR with a contract form containing the unlawful
5  dishonored check fee. (*Reply* at 8.)

6      Whether ACE exercised sufficient control to incur liability for YFR's alleged
7  violations is an inquiry into the merits that is well beyond the scope of the current
8  motion for class certification.  Therefore, the Court refrains from determining the
9  suitability of injunctive relief in the current action, finding only that Plaintiff Goins is
10 an atypical representative of the subclass because of the unique circumstances
11 surrounding her transactions with Defendants.

12     The UCL subclass as pled in the Complaint seeks restitution and injunctive relief
13 under Business and Professions Code § 17200 *et seq* for Defendants' failure to comply
14 with the Check Casher Statute and Deferred Deposit Transaction Law.  (*Complaint* at
15 19-20.)   In particular, Plaintiffs contend that Defendants used deferred deposit
16 agreements that did not comply with the statutes, and failed to post clearly and
17 conspicuously a schedule of fees and charges.  (*Id.*)  Goins argues that she is seeking only
18 injunctive relief for statutory and contract violations.

19     Defendants counter that Goins is not typical of the UCL subclass because she did
20 not suffer any actual damages or injuries as required under B&P Code §17200.
21 Defendant's cite Proposition 64 which included an amendment to B&P's Code §17204,
22 changing the statute's language to provide that a person can bring suit only if that
23 person "has suffered injury in fact and has lost money or property as a result of such
24 unfair competition." §§ 17204, 17535.  In light of Proposition 64, Defendants argue that
25 Goins cannot represent the UCL subclass because she has not suffered any injury in fact.
26     The Court finds that Goins cannot represent the UCL subclass because she has
27 not alleged any injury stemming from Defendants' purported violation of the Check
28 Casher Statute or Deferred Deposit Transaction Law.  Furthermore, inherent in the

language of Proposition 64's "actual injury" requirement is the notion that a plaintiff actually relied on the false or misleading representation in entering into the transaction. As a frequent customer of the payday loan industry, Goins had familiarity with the policies and procedures attendant with her loan agreements.  Therefore, it is highly unlikely that Goins relied on Defendants advertising when entering the transaction of which she now complains.

  For the above stated reasons, the Court finds that Plaintiff Goins is atypical of the subclasses she seeks to represent and Plaintiff's motion for class certification is **DENIED**.

  <u>MARIE AFICIAL</u>

  Plaintiff Aficial had four payday loans with YFR after January 1, 2005. (Aficial Dec. ¶3).  Aficial paid every YFR loan on time, without additional fees, interest or charges being incurred or imposed. (*Kirby Dec Ex C* at 119.)  On March 17, 2005, Aficial met with Goins and Plaintiffs' counsel, Mr. Fox, and then proceeded across the street to the YFR store and took out a $300 loan to be repaid on March 31, 2005. (*Kirby Dec Ex C* at 100-101.)  Thereafter, Goins helped Aficial prepare a letter in which Aficial enclosed a $40 payment and stated she was closing her account with YFR.  (*Kirby Dec. Ex C* at 69-70.)  As with Goins, when YFR did not receive the $300 loan repayment from Aficial, YFR withdrew the money from her account as the Payroll Advance Agreement expressly authorized YFR to do.  Because Aficial's check was good, she had overpaid YFR by $40, therefore, YFR sent a letter to Aficial to make arrangements to return her $40 overpayment. (*Kirby Dec. Ex C* at 78)  Aficial claims to have never received this letter, despite it being sent to the home address where she has resided for over 20 years. (*Id.*)

  Aficial contends that her claims are typical of the Deferred Deposit Law, CLRA and UCL subclasses which she seeks to represent.  In particular, Aficial signed the same form agreements that all other putative class members signed and was allegedly charged the unlawful fee.

Defendant argues that Aficial is not typical of the subclasses she proposes to represent because of the circumstances surrounding her payday loan transactions. Defendant claims that, just as with Goins, Aficial incurred no actual damages because the refund was available but she chose not to pick it up.  Furthermore, Aficial was not charged any additional fee for return of a dishonored check because Aficial's check cleared the first time it was deposited by YFR.  According to Defendants, the unusual circumstances of Aficial's final payday loan transaction with YFR make her atypical of the class of customers who were overcharged by $5 in the Deferred Deposit Transaction Law subclass.  Defendant also claims that, just as with Goins, Aficial is not entitled to the relief requested in the CLRA or UCL subclasses.

The Court agrees.  Plaintiff Aficial is not typical of the class members in the Deferred Deposit Transaction Law subclass because she was not overcharged for a dishonored check, but merely chose not to pick up a refund due to her by YFR. Accordingly, Aficial cannot represent the Deferred Deposit Transaction Law subclass because her claims are not typical of the putative class members' claims.

Furthermore, Aficial cannot represent the CLRA subclass because, as with Goins, she failed to file the requisite notice with ACE under Civil Code § 1782(a) and is therefore unable to seek restitution under the CLRA.  Because other subclass members may have properly complied with the CLRA notice requirements Aficial cannot adequately represent their interests as class representative.  As stated above, injunctive relief is only appropriate under the CLRA where there is a threat of continuing misconduct and it is beyond the scope of the present inquiry to determine whether the CLRA subclass can be maintained against ACE for the actions of YFR as a franchisee. However, the Court finds Plaintiff Aficial cannot serve as class representative for the CLRA class regardless of whether claims for injunctive relief can be maintained against Defendants due to the unique circumstances of Aficial's conduct. See Hanon, 976 F.2d at 508.

In addition, Aficial cannot represent the UCL subclass because she did not

suffer any injury in fact as required under B&P Code § 17204.   Due to the unique circumstances surrounding Aficial's transaction she was not injured by the same course of conduct as other subclass members and therefore she is an atypical class member ill-suited to represent the absent class members.  See Takeda v. Turbodyne Technologies Inc., 67 F.Supp.2d 1129, 1136-37 (C.D. Cal. 1999).  Plaintiff Aficial's motion for class certification is therefore **DENIED**.

### ANTONIA TORRES

Plaintiff Torres obtained two payday loans, including the $100 loan she secured in March 2005 from an ACE location in Moreno Valley, Riverside County. (*Kirby Dec. Ex* D. at 13, 23.)  Torres admitted to having over $10,000 in her Washington Mutual checking account, going to an ACE location that was 48 minutes from her home to secure a $100 payday loan to buy lunch for her children, and paying a $15 fee to obtain the loan instead of withdrawing the funds from her account claiming she did not have her checkbook or ATM with her at the time. (*Id* at 25, 35-38.)  The loan was repaid when ACE took an automatic withdrawal to repay the amount due after the end of the 14 day loan repayment period.  (*Oppo* at 10.)

Torres seeks to represent the Injunctive Relief Subclass which asserts that Defendants violated Financial Code § 23035(d) because Defendants did not post a notice in it's stores informing customers that "the licensee cannot use the criminal process against a consumer to collect any deferred deposit transaction." (*Compaint* at 22.)  Defendants were also required under Section 23035(d) to post a schedule of all charges and fees, which Plaintiff claims they failed to do.  The subclass seeks an injunction under Business & Professions ("B&P")Code § 17200 *et seq* prohibiting Defendants from petitioning to compel arbitration of any claim arising from a transaction at an ACE Cash Express store in California which has displayed unlawful signage.  Torres further alleges that ACE's willful violations of the Deferred Deposit Transaction Law void its contract with Plaintiff Torres including but not limited to the arbitration provision contained therein, and that ACE cannot enforce, collect, receive

or retain any amount provided for in the deferred deposit transactions at issue. (*Complaint* at 23 & 26.)

Defendants argue that Torres is not typical of the Injunctive Relief Subclass because Defendants have not sought to compel her to arbitration and she has not claimed she suffered any damages, so there is no injury in fact for which Torres can complain. Under B&P Code § 17200 Defendants argue that a person bringing suit must have suffered injury in fact and have lost money or property as a result of such unfair competition. (*Oppo* at 22.)  In addition, Defendant contends that the facts surrounding Torres' single payday loan from ACE are not representative of the average payday loan transaction, and "can only be charitably described as bizarre". (*Oppo* at 10).

The Court finds that Torres is not typical of the class members she seeks to represent in the Injunctive Relief subclass because ACE has not sought to compel arbitration of any claim for injunctive relief by Torres, therefore Torres has no injury for which she can seek redress.  It is feasible that there are putative class members who were injured by Defendant's alleged violations of the Deferred Deposit Transaction Law and with whom Defendant has sought to compel arbitration however Torres is not an adequate representative for these consumers.

Furthermore, any claim that the agreements are void for ACE's allegedly willful violation of Financial Code 23019 and 23035 can only be maintained by a customer who actually suffered injury under B&P Code §17200.  Torres alleges that Defendants failed to post required signage, but in her deposition Torres discussed the menu board of charges and stated that she couldn't understand them.[5]  Torres cannot now allege that Defendants failed to post required signage simply because she could not understand it.  Because Torres has not suffered any injury as a result of Defendant alleged violation of Financial Code §§ 23019, 23035 her claims are not typical of the Injunctive Relief

---

[5]By her own admission, Torres couldn't understand the menu and sought help from the counter person asking "Can you explain me? Because I cannot understand [the sign]. I got a loan for $100, how much I got to pay?" (*Kirby Dec Ex* D at 61.)

1  Subclass and she cannot serve as class representative.  Plaintiff's motion for class

2  certification is therefore **DENIED**.

3    Accordingly, the Court finds that Plaintiffs have not sufficiently demonstrated

4  that their claims are typical of the proposed classes' claims.  As Plaintiffs' failure to meet

5  any one of Rule 23(a)'s requirements precludes class certification, the Court need not

6  consider Rule 23(a)'s remaining prerequisites.  Plaintiffs' motion for class certification

7  is **DENIED**.

8

9    **IV.** CONCLUSION AND ORDER

10    In light of the foregoing, the Court **DENIES** Plaintiffs' motion for class

11  certification.  [Doc. No. 31-1.]  This action shall proceed on an individual basis.

12

13    **IT IS SO ORDERED.**

14

15

16  DATED:  September 14, 2006

17

18            Hon. Thomas J. Whelan

19            United States District Judge

20

21

22

23

24

25

26

27

28